Of Counsel:

ROMAN AMAGUIN, ESQ. 6610-0
345 QUEEN STREET
Suite 504
Honolulu, Hawaii 96813

Telephone: (808) 545-4151
Facsimile: (888) 236-8984
Email: roman@amaguinlaw.com

Attorney for Plaintiff
DONALD S. GUZMAN

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DONALD S. GUZMAN ) | CIV NO. _____ |
| ) | |
|    Plaintiff, ) | |
| ) | |
| ) | COMPLAINT; DEMAND FOR |
|    vs. ) | JURY TRIAL; SUMMONS |
| ) | |
| ) | |
| COUNTY OF MAUI; MAUI ) | |
| COUNTY COUNCIL; MAYOR ) | |
| MICHAEL VICTORINO, in his ) | |
| Official Capacity, ) | |
| ) | |
|    Defendants. ) | |
| ) | |
| _____ ) | |

**NATURE OF THE ACTION AND JURISDICTION**

This is an action under the United States Constitution for the violation of constitutional rights made actionable pursuant to 42 U.S.C. § 1983, among other violations, including wrongful actions and conduct under HRS § 378-2(a)(1)(A), by Defendants COUNTY OF MAUI, MAUI COUNTY COUNCIL, and MAYOR MICHAEL VICTORINO, in his official capacity.

Plaintiff DONALD S. GUZMAN asserts that Defendants unlawfully discriminated against him on the basis of his disability and protected activity, and retaliated against Plaintiff under state law and the United States Constitution, as follows:

## JURISDICTION AND VENUE

1.     This case arises under the Constitution of the United States of America, including but not limited to the First and Fourteenth Amendments to the United States Constitution, statutory authority of the State of Hawaii, HRS § 378-2, and common law.

2.     The claims asserted herein are authorized by and present a question of federal law, thereby conferring jurisdiction upon the Court pursuant to 28 U.S.C. §§1331, 1343(3), 2201 and 2202, and 42 U.S.C. § 1983, *inter alia.*

3.     Any and all state law claims contained herein form part of the same case or controversy as gives rise to Plaintiff's federal law claims and therefore fall within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

4.     Venue resides in the United States District Court for the District of Hawai'i pursuant to 28 U.S.C. § 1391(b), *inter alia*, as all of the events and/or omissions described herein occurred in the State of Hawaii.

5.     The request for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202.

## **PARTIES**

6.     Plaintiff is and was a U.S. citizen and resident of the County of Maui, State of Hawaii.

7.     Defendant COUNTY OF MAUI is and has been a duly organized municipal corporation of the State of Hawai'i at all times pertinent hereto.

8.     The Maui County Council is the legislative and policy-making body of the Maui County Government.

9.     Mayor Victorino is the Mayor of the County of Maui. Mayor Victorino heads the executive branch and is the chief

executive officer of the County of Maui.

10.    Among other duties, the mayor, as the chief executive officer of the county, exercises supervision directly or through the managing director over all departments enumerated in the Maui County Charter.

11.    The Department of the Prosecuting Attorney for the County of Maui serves the islands of Maui, Molokai, and Lanai.

12.    The department is administered by the Prosecuting Attorney, who is appointed by the Mayor and confirmed by the County Council.

13.    On or around March 1, 2019, Mayor Victorino appointed Plaintiff to the position of Prosecuting Attorney for the County of Maui and, on April 5, 2019, the Maui County Council unanimously confirmed Plaintiff to the position.

14.    Defendant Mayor Victorino terminated Plaintiff as Prosecuting Attorney for the County of Maui on or around October 19, 2020.  Mayor Victorino previously placed Plaintiff on administrative leave without pay on September 15, 2020.

15.    On or around December 4, 2020, the Maui County Council approved Mayor Victorino's termination decision.

16.    Defendant Mayor Victorino is sued in his official capacity.

17.    All of the acts and failures to act alleged herein were duly performed by and attributable to all Defendants, each acting as a successor, agent, employee alter ego, indirect employer, joint employer or under the direction and control of the others, except as specifically alleged otherwise.

18.    Said acts and failures to act were within the scope of such agency and/or employment, and each Defendant participated in, approved and/or ratified the unlawful acts and omissions by the other Defendants complained of herein.

19.    Whenever and wherever reference is made in this Complaint to any act by a Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly, and/or severally.

20.    Plaintiff asserts that all conditions required for filing suit have been satisfied.

## <u>STATEMENT OF CLAIMS</u>

21.    Plaintiff is a devoted public servant and, other than the incident that was the subject of an investigative report dated

October 6, 2020, Plaintiff has selflessly served the people of Maui
County without any controversy or issues.

22.   Plaintiff's work as Prosecuting Attorney was nothing
short of exemplary with the one incident that was investigated being
the only negative entry in his personnel file.

23.   The County of Maui hired an outside investigator on or
around September 24, 2020, to investigate the incident.

24.   The decision to hire an outside investigator was made by
Mayor Victorino.

25.   The assigned role of the investigator was to investigate a
complaint initiated by an attorney working under Plaintiff at the
Department of the Prosecuting Attorney, Leslee Matthews.

26.   The investigator was to determine whether or not Plaintiff
had violated any County of Maui rules or procedures, more
specifically, the Violence in the Workplace ("VIW") Action Plan, with
respect to an incident between Plaintiff and Ms. Matthews.

27.   The investigator, in the final report, did address solely as
assigned, the issue whether or not Plaintiff violated the VIW Action
Plan in his interaction with Ms. Matthews, starting with his
response to an email Plaintiff sent to the department on August 28,

2020.

28.   No other incidents or potential incidents of workplace violence were made part of the investigation.

29.   The investigation was completed and submitted to Managing Director for the County of Maui, Sandy Baz, on October 9, 2020.

30.   The Maui County Council's Governance, Ethics, and Transparency Committee received a copy of the investigative report on October 29, 2020, after Mayor Victorino terminated Plaintiff on October 19, 2020.

31.   The investigative report was 156 pages.

32.   Every witness interviewed, including Ms. Matthews and Plaintiff, signed an acknowledgment form.

33.   The acknowledgment form emphasized that the witness's statement was confidential and would be shared only on an "as-needed" basis.

34.   The form signed by each witness admonished the witness to be truthful, and to provide complete information.

35.   The purpose of the acknowledgment form was to protect the integrity of the investigation and the privacy of the parties.

36.   The investigator, after extensive interviews with witnesses, Ms. Matthews, and Plaintiff, concluded that Plaintiff had violated the VIW Action Plan.

37.   Specifically, on August 28, 2020, Matthews sent a Department-wide email questioning the Department's COVID-19 protocols.

38.   Plaintiff had a meeting with Ms. Matthews present on September 15, 2020.  The investigator found the VIW policy was violated at the meeting when Plaintiff grabbed a copy of the email from Matthews, and that the manner in which he communicated to Matthews at the meeting was hostile and/or threatening to her and her job in violation of the VIW policy.

39.   The investigator noted that Matthews and Plaintiff had a good working relationship prior to the incident that was investigated.  The incident with Ms. Matthews involved no touching, slurs, or profanity, but mostly raised voices, regarding the work-related issue.

40.   The investigation indicates there did not appear to be any other discord between the two, although Plaintiff did have some concerns regarding the quality of Ms. Matthews' work.

41.   The October 9, 2020 report was submitted to Sandy Baz, Managing Director.  On October 16, 2020, Plaintiff met with Mayor Victorino regarding the findings.

42.   During the October 16th meeting with Mayor Victorino, Plaintiff was informed of the results of the investigation.

43.   However, Plaintiff was not permitted by Mayor Victorino to review any portion of the report, despite Plaintiff's request for access.

44.   Plaintiff attempted to meaningfully participate in the meeting, but believed his ability to explain his side was stifled by Mayor Victorino.

45.   At one point during the October 16th meeting, Plaintiff informed Mayor Victorino and the two other persons at the meeting, Baz, and Deputy Managing Director, Josiah Nishita, that he was suffering from diabetic neuropathy and other negative impacts from Type II Diabetes, such as diabetic rage, which is a result of fluctuating glucose levels.

46.   As a diabetic, Plaintiff is substantially limited in the major life activity of endocrine function

47.   The negative impacts of Plaintiff's medical condition were

compounded by the stress of dealing with the COVID-19 pandemic, and the management of employees, which led to the incident involving Ms. Matthews.

48.   As a diabetic constantly having to address fluctuating glucose levels, Plaintiff's condition and neuropathy were also worsened by medication which resulted in more drastic diabetic-related mood swings.

49.   Despite Plaintiff raising the issue of the health condition with Mayor Victorino, and placing Mayor Victorino on notice for the potential need for reasonable accommodation, there was no follow up by either Mayor Victorino or later, by the Maui County Council.

50.   At the October 16, 2020 meeting, instead of allowing Plaintiff to further explain the condition, Mayor Victorino simply instructed Plaintiff to either resign or be terminated.

51.   Then, on October 19, 2020, Plaintiff received written correspondence signed by Mayor Victorino, entitled "Termination of Employment.

52.   The letter stated that Ms. Matthews' complaint was "substantiated," which was the basis for Mayor Victorino's termination decision.

53.    The letter stated that based on the violation of the policy "we have no option but to place you on leave without pay, effective October 19, 2020, and submit a resolution to Council requesting concurrence on your removal from office pursuant to Section 8-3.2 of the Charter of the County of Maui."

54.    A resolution dated October 21, 2020, entitled "Resolution Approving the Removal of Prosecuting Attorney Donald S. Guzman," was submitted to the Maui County Council.

55.    The resolution Mayor Victorino was required to submit is a due process protection adopted by the County of Maui specifically for the position of Prosecutor for the County of Maui.

56.    The resolution submitted to the Council requested "concurrence" by the Council of Mayor Victorino's termination of Plaintiff, in connection with the incident involving Ms. Matthews.

57.    The Governance, Ethics, and Transparency Committee for the County Council held an open meeting on November 5, 2020, to discuss Mayor Victorino's recommendation.

58.    The County Council solicited and accepted false and inaccurate testimony from numerous people who provided testimony based on rumors and hearsay regarding issues that

11

clearly fell outside the scope of the investigative report.

59.   At least nine of the testifiers spoke on their interactions and impressions of Plaintiff, many of them as far back of 2014, when Plaintiff was on the County Council.

60.   The allegations made against Plaintiff by these numerous testifiers, included the belief that Plaintiff is an "abuser," that he targets women for violence, that Plaintiff committed prosecutorial misconduct as a prosecutor, that he kicked a vehicle during a "tantrum" when he was first elected to the County Council, that he knowingly "allowed a meth lab to operate" in an apartment complex that housed children, that he is essentially prejudiced against Native Hawaiians, and that he is sexist.   Plaintiff denies all of the allegations.

61.   County Council members aired their own experiences with Plaintiff and evidently took the irrelevant testimony, much of it based on rumors and hearsay, as truth.

62.   One member suggested that the irrelevant and unsupported testimony was factual, based on her own experiences with Plaintiff when they were both on the County Council starting in 2014.

63.    Another member made it clear she accepted the truth of the unrelated allegations made in open hearing by stating "I noticed that most, if not all, of your violations have been against women," and asked Plaintiff: "`Don't you ever pick on anyone your own size?'"

64.    Plaintiff did not waive his privacy to allegations that fell outside the investigative report and the incident involving Ms. Matthews.

65.    The numerous allegations made at the hearing were based on unfounded rumors, hearsay, and unsupported accounts of past incidents that involved persons other than Ms. Matthews and the specific issue presented to the Council.

66.    The solicitation and receipt of testimony regarding allegations unrelated to Plaintiff's interaction with Ms. Matthews, was a violation of Plaintiff's constitutional right to privacy.

67.    Plaintiff had a legitimate privacy interest in not having one-sided, biased, and unconfirmed "dirty laundry" aired in open hearing.

68.    There was no way Plaintiff could have effectively rebutted irrelevant and unsupported testimony he did not reasonably

anticipate would be put forth, much of which was hearsay.

69.   The Council's initial and final unanimous vote to remove Plaintiff from his position was clearly affected by the testimony regarding incidents that were unrelated to the specific subject of the investigative report involving Ms. Matthews.

70.   None of the testifiers were formally admonished to be truthful, and to provide complete information.

71.   None of the testifiers were tested on their knowledge of the details of the incidents they testified on by an independent investigator.

72.   There were no procedural safeguards in place like the ones set up by the investigator retained by the County to investigate the incident involving Ms. Matthews.

73.   The Council did not allow and/or permit Plaintiff the opportunity to respond, rebut and/or refute the negative allegations made by testifiers and Council member(s).

74.   Council member(s) assumed that the negative allegations made by the testifiers were factual and denied Plaintiff the opportunity to respond, rebut and/or refute such testimony.

75.   Council member(s) made direct accusatory statements

14

towards Plaintiff and denied Plaintiff the opportunity to respond by cutting him off and/or completely denying Plaintiff the opportunity to respond, rebut and/or refute such accusations.

76.   During the November 5th, 2020, meeting Plaintiff explained to the Committee on Governance, Transparency, and Ethics that he had been struggling to control his medical condition, Type 2 Diabetes.

77.   He testified that his health issue had caused neuropathy—nerve damage that causes tingling, numbness, burning or pain, that begins at the tips of the toes or fingers and gradually spreads up-wards—and that impacted his relations with others, such as Ms. Matthews.

78.   Plaintiff's physicians had certified his medical condition, and confirmed he suffered from severe Diabetic Polyneuropathy.

79.   Further, Plaintiff had tried several medications and the current medication was causing side effects, such as mood swings.

80.   In addition, the pain neuropathy had also caused severe problems with sleep deprivation.

81.   The County fell short with respect to the "due process" to which Plaintiff was entitled and his right to privacy.  In addition,

Mayor Victorino and the County of Maui should have, but failed to consider Plaintiff's own protected disability in fashioning a remedy for the purported violation of the VIW policy.

82.   As a proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer job insecurity, loss of earnings and benefits, humiliation, emotional distress, and mental and physical anguish all to his damage in an amount to be proven at trial.

83.   Plaintiff is entitled to damages from Defendants.

84.   Defendants' acts and/or omissions were willful, wanton, outrageous and oppressive and were done with callous indifference to Plaintiff's present and future ability to earn a living.

85.   Therefore, Plaintiff is also entitled to punitive and exemplary damages from Defendants in an amount to be proven at trial.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### VIOLATION OF THE CONSTITUTIONAL RIGHT TO PRIVACY, ACTIONABLE PURSUANT TO 42 U.S.C. § 1983

86.   Plaintiff re-alleges and incorporates by reference as

16

though fully contained herein, the allegations set forth in paragraphs 1 through 85, above.

87.   Plaintiff has an individual interest in avoiding disclosure of personal matters, known as "informational privacy."

88.   In Plaintiff's case, the issue whether or not inquiry into unrelated incidents, when he was on the County Council, and work-related incidents several years in the past, is an unwarranted violation of his informational privacy rights, as framed by the scope of the formal investigation itself.

89.   The County of Maui retained an investigator for the specific and sole purpose of making findings with respect to an incident involving Plaintiff and Ms. Matthews.

90.   The solicitation, receipt and open discussion of any issue or incident outside the scope of the investigation should have been done in a private executive session.

91.   The fact that no executive private session was held to discuss completely irrelevant, unverified, sensitive and untested testimony, violated Plaintiff's right to privacy.

92.   Plaintiff had a reasonable expectation of privacy in the information shared by the numerous testifiers at the November 5,

17

2020, hearing.

93.   Such breaches violated Plaintiff's privacy rights, in addition to rendering the purpose of the investigation conducted by the investigator meaningless.

94.   On the strength of the improper and unlawful testimony, the County Council agreed to terminate Plaintiff.

95.   Plaintiff has been damaged because of the loss of wages, loss of future earning capacity, fringe benefits and other employment opportunities, all to his damage in a sum according to proof at trial.

96.   As a further result of the above-described wrongful conduct of the Defendants, and each of them, Plaintiff has suffered humiliation, mental anguish and emotional distress, all to his general damages in a sum according to proof at trial.

97.   The above-described actions of the Defendants, and each of them, were done with malice, fraud and oppression and in reckless disregard of Plaintiff's right to privacy, so as to justify an award of punitive and exemplary damages.

**SECOND CLAIM FOR RELIEF**

**VIOLATION OF THE CONSTITUTIONAL RIGHT TO DUE**

## PROCESS, ACTIONABLE PURSUANT TO 42 U.S.C. § 1983

98.  Plaintiff re-alleges and incorporates by reference paragraphs 1-97 above.

99.  The Fourteenth Amendment of the Constitution protects against deprivation of liberty and property without due process of law.

100.  In the course of terminating Plaintiff's employment, Defendants solicited and received in open hearing stigmatizing false information that Plaintiff had either no way of preventing or rebutting.

101.  Plaintiff did not waive his privacy to allegations that fell outside the investigative report and the incident involving Ms. Matthews.

102.  The numerous allegations made at the hearing were based on unfounded rumors, hearsay, and unsupported accounts of past incidents that involved persons other than Ms. Matthews and the specific issue presented to the Council.

103.  The solicitation and receipt of public testimony regarding false allegations unrelated to Plaintiff's interaction with Ms. Matthews, was made in connection with his termination, and

19

violated protected liberty interests in his reputation and integrity.

104. There was no way Plaintiff could have effectively rebutted irrelevant, unsupported, and false testimony that he did not reasonably anticipate would be put forth.

105. The Council's initial and final unanimous vote to remove Plaintiff from his position was clearly affected by the testimony regarding incidents that were unrelated to the specific subject of the investigative report involving Ms. Matthews.

106. In addition to a liberty interest, Plaintiff asserts he was denied procedural due process in the investigation and the manner in which he was terminated.

107. During the October 16th meeting with Mayor Victorino, Plaintiff was informed of the results of the investigation.

108. However, Plaintiff was not permitted by Mayor Victorino to review any portion of the report, despite Plaintiff's request for access.

109. Plaintiff attempted to meaningfully participate in the meeting, but believed his ability to explain his side was stifled by Mayor Victorino.

110. By letter dated October 19, 2020, Mayor Victorino

informed Plaintiff that "we have no option but to place you on leave without pay, effective October 19, 2020, and submit a resolution to Council requesting concurrence on your removal from office pursuant to Section 8-3.2 of the Charter of the County of Maui." Contrary to what was stated in the letter, there were options available had Mayor Victorino permitted Plaintiff to review the report and had considered Plaintiff had a medical condition that contributed to the manner in which he interacted with Matthews.

111. Nevertheless, a resolution dated October 21, 2020, entitled "Resolution Approving the Removal of Prosecuting Attorney Donald S. Guzman," was submitted to the Maui County Council.

112. The resolution Mayor Victorino was required to submit is a due process protection adopted by the County of Maui specifically for the position of Prosecutor for the County of Maui.

113. The Governance, Ethics, and Transparency Committee for the County Council held an open meeting on November 5, 2020, to discuss Mayor Victorino's recommendation.  The committee discussed the application of the "Seven Tests of Just Cause" as a guide to whether or not it would concur with Mayor Victorino's decision.

21

114. Defendants violated Plaintiff's right to due process by refusing to allow Plaintiff to review the report, by soliciting false information outside the scope of the report, by basing the termination decision on issues that fell outside the investigation, by allowing numerous testifiers to reveal sensitive and defamatory information to be aired in an open forum, by denying Plaintiff the opportunity to respond, rebut and/or refute direct accusations from the Council member(s) and testifiers, among other actions.

115. Defendants violated Plaintiff's right to due process by refusing to allow Plaintiff to review the report, by soliciting false information outside the scope of the report, by basing the termination decision on issues that fell outside the investigation, and by allowing numerous testifiers to reveal sensitive and defamatory information to be aired in an open forum, among other actions.

116. Defendants' actions were taken without adequate process.

117. Defendants violated the Due Process Clause of the United States Constitution.

118. As a proximate result Plaintiff has suffered and continues

to suffer job insecurity, loss of earnings and benefits, humiliation, emotional distress, and mental and physical anguish all to his damage in an amount to be proven at trial.

119. Plaintiff is entitled to damages from Defendants in an amount to be proven at trial.

120. Defendants' acts and/or omissions were willful, wanton, outrageous and oppressive and were done with callous indifference to Plaintiff's present and future ability to earn a living.

121. Therefore, Plaintiff is also entitled to punitive and exemplary damages from Defendants in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

## VIOLATION OF HRS § 378-2(a)(1)(A)

122. Plaintiff realleges and incorporates by reference as though fully contained herein, the allegations set forth in paragraphs 1 through 121, above.

123. HRS § 378-2(a)(1)(A) provides:

Discriminatory practices made unlawful; offenses defined. (a) It shall be an unlawful discriminatory practice:

(1) Because of race, sex, including gender identity or

expression, sexual orientation, age, religion, color, ancestry, **disability**, marital status, arrest and court record, or domestic or sexual violence victim status if the domestic or sexual violence victim provides notice to the victim's employer of such status or the employer has actual knowledge of such status:

(A)  For any employer to refuse to hire or employ or to bar or discharge from employment, or otherwise to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment.

HRS § 378-2(1)(A) (emphasis supplied).

124. As set forth above, during the course of Plaintiff's employment Defendants failed and/or refused to reasonably accommodate Plaintiff's disability in violation of HRS Chapter 378.

125. In addition, Defendants failed and/or refused to engage in an interactive process in good faith as mandated by HRS Chapter 378.

126. Defendants eventually took other adverse action against Plaintiff by terminating his employment, due to his disability in violation of HRS Chapter 378.

127. Similarly-situated employees were treated better. Specifically, other County of Maui officials have engaged in similar or worse conduct than what the report found Mr. Guzman engaged in, including verbal and physical acts of violence, verified repeated

24

behavior in violation of the VIW policy, harassment, theft, misappropriation, and other egregious acts, yet the officials were not terminated.

128. As a proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer job insecurity, loss of earnings and benefits, humiliation, emotional distress, embarrassment, damage to his reputation, and mental and physical anguish all to his damage in an amount to be proven at trial.

129. Plaintiff is entitled to damages from Defendants in an amount to be proven at trial.

130. Defendants' acts and/or omissions were willful, wanton, outrageous and oppressive and were done with callous indifference to Plaintiff's present and future ability to earn a living and therefore Plaintiff is also entitled to punitive and exemplary damages from Defendants in an amount to be proven at trial.

## PRAYER FOR RELIEF

131. Plaintiff is entitled to damages from Defendants.

132. Defendants' acts and/or omissions were willful, wanton, outrageous and oppressive and were done with callous indifference to Plaintiff's present and future ability to earn a living; and,

25

therefore Plaintiff is also entitled to punitive and other damages, to the extent permitted by law, and exemplary damages from Defendants.

Wherefore, Plaintiff prays this Court grant judgment in his favor over and against Defendants and award damages to Plaintiff, including special damages, back pay and future loss of earnings, compensatory damages, attorneys' fees, prejudgment interest, and to the extent permitted by law punitive damages in an amount deemed sufficient to punish Defendants for their actions; costs of this action; and such other and further relief as this Court may deem just and proper.

DATED:  Honolulu, Hawai`i, April 23, 2021.

/s/ Roman Amaguin
_____

ROMAN F. AMAGUIN
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DONALD S. GUZMAN | ) CIV NO. _____ |
| | ) |
|    Plaintiff, | ) |
| | ) |
| | ) DEMAND FOR JURY TRIAL |
|    vs. | ) |
| | ) |
| | ) |
| COUNTY OF MAUI; MAUI | ) |
| COUNTY COUNCIL; MAYOR | ) |
| MIKE VICTORINO, in his | ) |
| Official Capacity, | ) |
| | ) |
|    Defendants. | ) |
| | ) |
| _____ | ) |

## **JURY TRIAL DEMAND**

Plaintiff, by and through his undersigned counsel, hereby

demands a trial by jury as to all issues so triable herein.

DATED:  Honolulu, Hawaii, April 23, 2021

/S/ Roman Amaguin

_____

ROMAN F. AMAGUIN
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

DONALD S. GUZMAN    )  CIV NO. _____
                  )
   Plaintiff,        )
                  )
                  )  SUMMONS
   vs.            )
                  )
                  )
COUNTY OF MAUI; MAUI  )
COUNTY COUNCIL; MAYOR )
MICHAEL VICTORINO, in his )
Official Capacity,      )
                  )
   Defendants.     )
                  )
_____ )

**<u>SUMMONS</u>**

TO:  THE ABOVE-NAMED DEFENDANTS

A lawsuit has been filed against you.  Within 21 days after

service of this summons on you (not counting the day you received

it)—or 60 days if you are the United States or a United States

agency, or an officer or employee of the United States described in

Fed. R. Civ. P. 12 (a)(2) or (3)—you must serve on the plaintiff an

answer to the attached complaint or a motion under Rule 12 of the

Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Roman Amaguin, Esq., 345 Queen Street, Suite 504, Honolulu, Hawaii 96813.

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint.  You must also file your answer or motion with the court.

Clerk of Court

Date: _____          _____

_____

By Deputy Clerk