IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| DONALD S. GUZMAN, | Case No. 21-cv-00202-DKW-RT |
| Plaintiff, | |
| vs. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| COUNTY OF MAUI, *et al.*, | |
| Defendants. | |

## **INTRODUCTION**

Plaintiff Donald S. Guzman brings claims related to and following his December 2020 termination as the Prosecuting Attorney for the County of Maui. Guzman claims that his rights to privacy and due process under the U.S. Constitution have been violated and that he was discriminated against on account of a disability in violation of State law during the process culminating in his termination.

Roughly three months after the filing of Guzman's claims, Defendants move for summary judgment on each claim ("motion"). Among other things, Defendants argue that Guzman failed to exhaust his administrative remedies and, thus, the Court is precluded from considering his claims. They also argue that Guzman has waived his purported right to privacy and/or failed to identify any applicable federal basis for the same. Defendants further assert that Guzman was

provided with procedural due process before being terminated, and his disability discrimination claim fails for various reasons.

Having reviewed the parties' legal arguments and concise statements of fact, and having heard oral argument on the motion, the Court finds that, while many of Defendants' arguments are well-taken, the undisputed facts at this juncture in the proceedings reveal that Guzman was not provided with *due* process before his termination as Prosecuting Attorney.   Instead, the evidence shows that Plaintiff was effectively ambushed by the actions of Defendants.   Therefore, as more fully explained below, Defendants' motion for summary judgment, Dkt. No. 13, is GRANTED IN PART and DENIED IN PART.

## RELEVANT PROCEDURAL BACKGROUND

Guzman filed his Complaint against Defendants County of Maui (County), Maui County Council (Council), and Mayor Michael Victorino (Mayor, and, with County and Council, Defendants) on April 23, 2021, asserting three claims: (1) violation of the right to privacy under the 42 U.S.C. Section 1983 (Section 1983); (2) violation of the right to due process under Section 1983; and (3) disability discrimination in violation of Hawaiʻi Revised Statutes Section 378-2(a)(1)(A) (Section 378-2(a)(1)(A)).   Dkt. No. 1.

2

Three months later, on July 26, 2021, Defendants filed the instant motion and concise statement of facts (DCSF).   Dkt. Nos. 13-14.   On August 27, 2021, Guzman filed his opposition to the motion, response to DCSF (PCSFR), and his own concise statement of facts (PCSF).   Dkt. Nos. 20-21.   On September 10, 2021, Defendants filed their reply and response to PCSF (DCSFR), Dkt. Nos. 22-23.   On September 24, 2021, the Court held a hearing on the motion and the briefing related thereto and took the motion under advisement.   Dkt. No. 25.   This Order now follows.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim in the case on which the non-moving party has the burden of proof.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   In assessing a motion for summary judgment, however, all facts are construed in the light most favorable to the non-moving party.   *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005).

3

## **FACTUAL BACKGROUND**

On March 1, 2019, the Mayor appointed Guzman to the position of Prosecuting Attorney for the County, with that appointment being approved by the Council on April 5, 2019.   Decl. of Michael P. Victorino at ¶ 4, Dkt. No. 14-2; Resolution No. 19-71 at 2-3, 5, Dkt. No. 14-3.[1]

On September 15, 2020, a complaint under the Violence in the Workplace Action Plan (VIWAP) was filed against Guzman (9/15/20 VIWAP Complaint). DCSF at ¶ 1, Dkt. No. 14; PCSFR at ¶ 1, Dkt. No. 20.   On September 24, 2020, in connection with the 9/15/20 VIWAP Complaint, the County hired an outside investigator to investigate an incident that occurred between Guzman and another attorney, Leslee Matthews (Matthews), working under his supervision.   PCSF at ¶ 7, Dkt. No. 20; DCSFR at ¶ 7, Dkt. No. 23; 10/9/20 Confidential Report at 1, Dkt. No. 14-8.   On October 9, 2020, the outside investigator issued a 156-page (including exhibits) Confidential Report to the County regarding the 9/15/20 VIWAP Complaint (10/9/20 Report).   *See generally* 10/9/20 Report, Dkt. No. 14-8.   No other potential incidents of workplace violence were made part of the investigation or the 10/9/20 Report.   PCSF at ¶ 8; DCSFR at ¶ 8.

---

[1]In citing to Resolution No. 19-71, the Court cites the page numbers assigned by CM/ECF in the top-right corner of each page, *i.e.*, "Page 3 of 5."

Among other findings in the 10/9/20 Report, the outside investigator determined that Guzman had threatened Matthews about how she was to respond to him via email, threatened Matthews' job security, "aggressively" grabbed an email out of Matthews' hand, prevented Matthews from speaking during a meeting by continuously interrupting her, and slammed his hand on a table and raised his voice during the same meeting.   10/9/20 Report at 21-22.   The outside investigator concluded that these actions were "threats" in violation of the County's Workplace Violence Policy (VIW Policy).   *Id*. at 22.   The outside investigator also stated that certain matters had arisen during the investigation, but were beyond the scope of the same, including whether Guzman had violated the VIW Policy with respect to other employees.   *Id*.

After issuance of the 10/9/20 Report, Guzman met with the Mayor on October 16 and 19, 2020.   Victorino Decl. at ¶¶ 8, 12.   During the meetings, Guzman was not permitted to review the 10/9/20 Report, despite his request to do so.   Decl. of Donald S. Guzman at ¶ 28, Dkt. No. 20-1.[2]   Over the course of the

---

[2]In the DCSFR, Defendants appear to dispute Guzman's assertion that he was not permitted to review the 10/9/20 Report at the meetings with the Mayor.   *See* DCSFR at ¶ 11, Dkt. No. 23. The documents to which Defendants cite, however, in particular Exhibits H and L, concern Guzman's alleged receipt of the 10/9/20 Report in *November* 2020−long after the October 16 and 19 meetings.   Defendants' evidence, in other words, does not dispute this specific factual assertion from Guzman.

two meetings, the Mayor gave Guzman the option of resigning, removal from office, or demotion.   Victorino Decl. at ¶¶ 9, 12.   Guzman chose removal from office, *id*. at ¶ 13, and, on October 19, 2020, Guzman received a letter from the Mayor regarding his "Termination of Employment[,]" 10/19/20 Letter from Mayor to Guzman (Termination Letter), Dkt. No. 14-23 at 3-4.[3]   Therein, it stated Guzman had violated the VIW Policy and, therefore, he would be placed on leave without pay while a resolution was sent to the Council requesting concurrence on his removal.   Termination Letter at 3-4.   On October 21, 2020, a letter and proposed resolution were sent to the Council requesting its concurrence on Guzman's removal as Prosecuting Attorney for the County.   10/21/20 Letter from the Mayor to the Council, Dkt. No. 14-10.

On November 3, 2020, Guzman sent a letter to the Director of Council Legal Services regarding his "objections" to the 10/9/20 Report.   11/3/20 Letter from Guzman to David M. Raatz (11/3/20 Letter), Dkt. No. 20-4.   Therein, Guzman asserted that, prior to the Mayor taking action with respect to his removal from office, he was denied due process and denied the opportunity to read the 10/9/20 Report.   *Id*. at 1.   Guzman also objected to the Mayor disclosing any incidents

---

[3]In citing to the Termination Letter, the Court cites the page numbers assigned by CM/ECF in the top-right corner of each page, *i.e*., "Page 3 of 4."

unrelated to the 9/15/20 VIWAP Complaint and "request[ed]" that, before the Council, the scope of discussion be limited to Matthews and the 9/15/20 VIWAP Complaint. *Id*. at 2.

On November 4, 2020, the First Deputy Corporation Counsel for the County, Richelle Thomson, texted Guzman, asking if he would "like to review" the 10/9/20 Report. Decl. of Richelle M. Thomson at ¶ 4, Dkt. No. 14-9. Thomson did not receive a response. *Id*.[4]

The Council's Governance, Ethics, and Transparency (GET) Committee met on November 5 and 6, 2020 to discuss Guzman's removal as Prosecuting Attorney. DCSF at ¶ 5; PCSFR at ¶ 1. At the November 5, 2020 meeting, 45 people signed up to testify regarding the proposed resolution to remove Guzman. Minutes of 11/5/20 GET Committee Meeting at 16 (11/5/20 Minutes), Dkt. No. 14-12. The testifiers included friends and family of Guzman, his work colleagues, and members of the community. *See generally id*. at 16-83, 87-88. Each testifier was given three minutes of time to testify, followed by questions from councilmembers.

---

[4]In the motion, Defendants also assert that, at some point on November 4, 2020, Guzman was emailed a copy of the 10/9/20 Report. Dkt. No. 13-1 at 5. While Defendants have submitted a declaration in support of that statement, Decl. of Mimi Desjardins (Dkt. No. 14-14), the email itself is also in the record (Dkt. No. 14-15). The email, however, is not dated or timed and it does not contain the email address to which it was sent. *See id*. Thus, on this record, the Court cannot find as undisputed that Guzman was emailed a copy of the 10/9/20 Report on November 4, 2020.

*Id*. at 7.   Generally, individuals testified both against and in favor of Guzman keeping his position, with certain of both sets of testifiers relying upon or referring to Guzman's workplace and non-workplace conduct prior to the incident with Matthews as support for their stance.   *See generally id*. at 16-83, 87-88.

After this public testimony, Guzman himself testified for three minutes, followed by an additional five minutes later in the day.   *Id*. at 84-85, 100-103. During his testimony, Guzman asked for the meeting to remain open to the public and waived his right to have any part of the meeting closed to the public.   *Id*. at 85, 103-104, 124-125.[5]   Guzman did so as well on November 6, 2020.   Minutes of 11/6/20 GET Committee Meeting (11/6/20 Minutes) at 21-23, Dkt. No. 14-17. Guzman was also questioned at length by members of the GET Committee about, generally, matters in the 10/9/20 Report, as well as matters not part of the 9/15/20 VIWAP Complaint.   *Id*. at 104-134; 11/6/20 Minutes at 61-66.   When asked, Guzman did not deny that he had violated the VIW Policy, as determined in the 10/9/20 Report.   11/5/20 Minutes at 125.   However, on November 5, 2020,

---

[5]In PCSFR, Guzman "partially dispute[s]" the assertion that he asked for the November 5, 2020 meeting to remain open to the public.   PCSFR at ¶ 6.   Guzman's assertion and evidence in support thereof, however, do not dispute Defendants' statement that he wished for the meeting to remain open.   Put simply, the fact that Guzman may have *asked* for the meeting to be limited to the 9/15/20 VIWAP Complaint does not mean that, at the meeting, he did not request that it remain open to the public.   *See* 11/5/20 Minutes at 85.

Guzman reiterated that he had not received a copy of the 10/9/20 Report.   11/5/20

Minutes at 116, 118, 124, 128.   It was not until the November 6, 2020 GET

Committee Meeting that Guzman was able to report he had received and read a

copy of the 10/9/20 Report.   11/6/20 Minutes at 18.

   Near the conclusion of the November 6, 2020 meeting, the Chair of the GET

Committee recommended adopting the Mayor's proposed resolution to remove

Guzman as Prosecuting Attorney.   *Id*. at 66.   All of the other councilmembers

also voted to remove Guzman.   *Id*. at 72-73.

   On November 17, 2020, counsel for Guzman sent a letter to the County's

Department of Corporation Counsel.   11/17/20 Letter from Roman Amaguin to

the County (11/17/20 Letter), Dkt. No. 20-6.   Therein, counsel argued that

Guzman's due process and privacy rights under Section 1983 had been violated,

and he had been discriminated against on account of a disability in violation of

HRS Section 378-2(a)(1)(A) and the Americans with Disabilities Act.   *See*

*generally id*.

   On December 4, 2020, the Council unanimously approved the resolution

removing Guzman as Prosecuting Attorney, resulting in his termination.   DCSF at

¶ 9; PCSFR at ¶ 9; GET Committee Report No. 20-153, Dkt. No. 14-19.   In doing

so, among other things, the GET Committee observed that it had received

testimony in support of removing Guzman, including from employees of the County, with respect to workplace incidents that had "happened recently within the Department of the Prosecuting Attorney, but one occurred about five years ago in a previous workplace."   GET Committee Report No. 20-153 at 2.   The GET Committee found this testimony to be "credible."   *Id*.

On December 30, 2020, Guzman filed a charge of disability discrimination and, on February 5, 2021, he received a notice of right to sue from the Hawai'i Civil Rights Commission (HCRC).   PCSF at ¶ 15; DCSFR at ¶ 15; 2/5/21 Notice of Dismissal and Right to Sue, Dkt. No. 20-8.

## DISCUSSION

As discussed, Defendants seek summary judgment with respect to each of Guzman's three claims.   The Court first addresses Guzman's claim brought under State law and then turns to his claims under Section 1983.

### 1.    Count Three: Disability Discrimination Under Section 378-2

In the motion for summary judgment, Defendants argue that Guzman's claim of disability discrimination under Section 378-2(a)(1)(A) is procedurally unexhausted and without merit, and that they are immune from the claim.   More specifically, Defendants argue that, procedurally, Guzman has failed to provide

10

statutorily required notice of his claims to the County.   Dkt. No. 13-1 at 9-11.[6]
Defendants next argue that, on the merits, Guzman has failed to establish that he is
disabled, he is otherwise qualified to perform the essential duties of his job, or he
was terminated as a result of any disability.   *Id*. at 20-24.   Defendants further
contend that, under State law, they are immune from this claim because Guzman
has failed to show they acted with malice.   *Id*. at 24-27.

In response, Guzman first argues that he provided written notice of his
claims on November 3 and November 17, 2020 when he or his counsel sent letters
to the County and on December 30, 2020 when he filed a charge of disability
discrimination with the HCRC.   Dkt. No. 21 at 2-4.   Guzman also asserts that
Defendants were not misled or prejudiced by the notice he provided them.   *Id*. at
4-5.   Guzman also argues that he is disabled due to diabetes, and he is qualified to
perform the essential duties of his job.   *Id*. at 18-23.   Guzman additionally
contends that Defendants are not immune from this claim because he is not suing
them in their individual capacities.   *Id*. at 24.

---

[6]Defendants also appear to argue that Guzman's claims *under Section 1983* are procedurally
unexhausted due to a lack of notice.   *See* Dkt. No. 13-1 at 11 (arguing that lack of exhaustion
"precludes this Court from reviewing his claims.").   It is well-established, however, that a notice
requirement imposed by State law does not apply to claims under Section 1983.   *See Felder v.
Casey*, 487 U.S. 131, 153 (1988); *Ellis v. City of San Diego*, 176 F.3d 1183, 1191 (9th Cir.
1999).   Therefore, the Court declines to apply Defendants' exhaustion argument to Guzman's
federal claims.

The Court agrees with Defendants that Guzman has failed to satisfy the notice requirements of State law because he failed to provide notice to the correct individual and failed to state the amount claimed for his alleged injuries.   Hawaiʻi Revised Statutes Section 46-72 provides, in pertinent part:

> Before the county shall be liable for damages to any person for injuries to person or property…the person…within two years after the injuries accrued shall give the individual identified in the respective county's charter…notice in writing of the injuries and the specific damages resulting, stating fully when, where, and how the injuries or damage occurred, the extent of the injuries or damages, and the amount claimed.[7]

Here, assuming for present purposes that the letters and charge of discrimination Guzman relies upon stated fully when, where, and how his injuries or damage occurred, Guzman does not even attempt to contend that those letters and charge were provided to the individual identified in the County's charter—the county clerk—or that they stated the amount claimed.   There is good reason for this because the letters and charge clearly were and do not.   Instead, Guzman acknowledges that the November 3 and 17, 2020 letters were sent to, respectively, the Director of Council Legal Services and the Department of Corporation Counsel—neither of whom are the county clerk.   Similarly, there can be no dispute

---

[7]The County's charter provides that notice shall be given to the county clerk.   Maui County Charter § 13-6 (2021).

12

that neither the November 3 nor 17, 2020 letters state the amount claimed.

Rather, both letters are silent in that regard.[8]   Finally, the same is true of the

charge of discrimination.   There is no evidence to suggest it was sent to the county

clerk, and the charge is also silent on the amount claimed.   Therefore, the

undisputed evidence shows that Guzman failed to comply with Section 46-72[9] and,

thus, his claim under State law for disability discrimination must be dismissed

without prejudice for failure to provide the statutorily required notice to

Defendants.[10]   As a result, the motion is GRANTED as to Count Three of the

Complaint.[11]

---

[8]Specifically, to the extent relief is requested, the November 3, 2020 letter asks only for the meetings before the GET Committee to be limited in scope to the 9/15/20 VIWAP Complaint, while the November 17, 2020 letter merely asks for Guzman not to be fired.   Neither of those matters, however, are the relief Guzman seeks in this case, which is damages.

[9]Plaintiff also argues that he "sufficiently" complied with Section 46-72 under *Oakley v. State of Hawaiʻi*, 505 P.2d 1182 (Haw. 1973).   *Oakley*, however, concerned the "when, where, and how" portion of Section 46-72.   *Id.* at 1186.   *Oakley* did not permit a claimant to entirely ignore the parts of the statute requiring a notice to be sent to the individual designated by a county and the amount claimed to be stated.   Therefore, it is not applicable here.

[10]To repeat, dismissal of this claim is *without* prejudice.   As the Court observed at the hearing on the motion, Section 46-72 provides a claimant with <u>two years</u> from the date of accrual to give the required notice to the County.   The earliest possible time that Guzman's alleged injuries could have accrued is October 16, 2020, when the Mayor allegedly discriminated against Guzman at their first meeting.   That date is *less than one year ago*: thus, there is more than enough time for Guzman to provide the statutorily required notice of his disability discrimination claim, should he so wish.

[11]The Court notes Guzman is fortunate that it was unnecessary to reach the so-called merits of his disability discrimination claim.   The essence of the claim appears to be, in allegedly telling the Mayor at their meeting on October 16, 2021, for the first time, that he suffered from Type II Diabetes, the Mayor decided on the spot to try to terminate Guzman or ask him to resign.   Of course, Guzman ignores that, prior to him ever telling the Mayor about his diabetes, the 10/9/20 Report had been prepared, finding him in violation of the VIW Policy.   This is problematic, as

2.    **Count One: Right to Privacy**

In the motion for summary judgment, Defendants argue that Guzman waived any right to privacy he may have had when, at the GET Committee meetings, he asked for the same to remain open to the public.   Dkt. No. 13-1 at 11-14. Defendants also argue that Guzman has failed to identify the deprivation of any federal right, even though this claim is brought under Section 1983.   *Id*. at 14.   In response, Guzman argues that he waived his right to privacy only to the extent the GET Committee meetings involved the subject of the 10/9/20 Report.   Dkt. No. 21 at 5-11.

The Court agrees with Defendants that Guzman has failed to identify any federal right implicated by his alleged right to privacy claim.[12]   Neither the Complaint nor Guzman's response to the motion addresses the argument made by Defendants in this regard.   *See* Dkt. No. 1 at ¶¶ 86-97 (alleging an interest in "informational privacy" and "privacy rights," but failing to identify any federal

---

Guzman provides no evidence that, absent him revealing his medical condition, the Mayor would have taken some less adverse action.   Guzman further ignores that each of the councilmembers voted to approve the Mayor's resolution, apparently without knowledge of his diabetes until Guzman again announced the same, for the first time, at the November 5, 2020 meeting.   Put simply, there is no evidence that Guzman was terminated due to his diabetes, which is presumably why he does not even make that argument in his response to the motion.   *See* Dkt. No. 21 at 17-24 (addressing the first and second elements of a prima facie discrimination claim, but not the third element concerning being subject to an adverse action *because of* a disability).
[12]It is, therefore, unnecessary to address whether Guzman waived his right to privacy by asking for the GET Committee meetings to remain open to the public.

right); Dkt. No. 21 at 5-11.   Even when pressed at the hearing on the motion as to

the nature of the federal right at issue here, Guzman's counsel could only offer

general notions of privacy.   Therefore, because Guzman must allege the

deprivation of a federal right when bringing a claim under Section 1983, *Anderson*

*v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006), and has failed to do so, the motion

is GRANTED as to Count One.

### 3.   <u>Count Two: Procedural Due Process</u>[13]

The parties agree that to establish a procedural due process claim under

Section 1983, a plaintiff must show: "(1) a liberty or property interest protected by

the Constitution; (2) a deprivation of the interest by the government; and (3) lack

of process."   *Guatay Christian Fellowship v. Cty. of San Diego*, 670 F.3d 957, 983

(9th Cir. 2011) (quotation omitted); Dkt. No. 13-1 at 15; Dkt. No. 21 at 12.

---

[13]In his response to the motion for summary judgment, Guzman appears to characterize his due process claim as involving both procedural and substantive due process.   *See* Dkt. No. 21 at 12-17.   While the Court agrees that this claim implicates procedural due process, Guzman provides little helpful explanation as to why it also involves substantive due process.   Notably, in citing cases, such as *Mustafa v. Clark Cty. Sch. Dist.*, 157 F.3d 1169 (9th Cir. 1998) and *Campanelli v. Bockrath*, 100 F.3d 1476 (9th Cir. 1996), Guzman cites cases for principles of *procedural*, not *substantive,* due process.   *See Mustafa*, 157 F.3d at 1179 (explaining that a public employee "must be given an opportunity to refute" a stigmatizing charge); *Campanelli*, 100 F.3d at 1478 (explaining that an employer can be held liable for a "procedural due process violation" when terminating an employee after the employer makes a stigmatizing charge that might seriously damage the employee's standing).   Therefore, the Court treats Count Two as alleging only a procedural due process violation.

In the motion for summary judgment, Defendants concede that Guzman has established the first two elements.   Dkt. No. 13-1 at 15.   They argue, however, that he was provided with adequate process.   Specifically, Defendants argue that, prior to his termination, Guzman had meetings with the Mayor and the Council, and had opportunities to address his removal before the GET Committee, provide testimony and respond to questions, submit written objections, have legal counsel address the GET Committee, and respond to testimony given at the GET Committee meetings.   *Id*. at 15-20.

In response, Guzman argues that he was not provided adequate process because he was not allowed to review the 10/9/20 Report, the Council solicited false information during the GET Committee meetings, his termination decision was based on issues outside of the 10/9/20 Report, and he was denied the opportunity to respond to accusations during the GET Committee meetings.   Dkt. No. 21 at 12-13.   Guzman also argues that Defendants ignored his request for the GET Committee meetings to be limited to the 10/9/20 Report and people who testified at the meetings were not "admonished to be truthful…."   *Id*. at 13-15.

While the Court does not agree with all of the arguments Guzman makes, based on the undisputed facts presented here, the Court does agree that he was denied procedural due process prior to his termination.   "An essential principle of

16

due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quotation omitted).   Here, although Guzman undoubtedly received a hearing both before the Mayor and the Council, on the current record, he was provided with no meaningful *notice* of the reason for those hearings.   Many undisputed facts lead to this conclusion.

First, prior to and during the meeting with the Mayor, Guzman was never provided with a copy of the 10/9/20 Report.   At most, *during* the first meeting with the Mayor, he was only informed of the result of the 10/9/20 Report.   *See* Victorino Decl. at ¶ 8.   Guzman, therefore, could not have had an opportunity to respond to the 10/9/20 Report prior to meeting with the Mayor.   Second, although Guzman requested the 10/9/20 Report during his first meeting with the Mayor, he was not provided with it then, nor was he provided it prior to his second meeting with the Mayor a few days later.   Therefore, he again was unable to prepare in any meaningful way prior to the second meeting.   Third, only *after* the second meeting with the Mayor was Guzman provided with a two-page summary of the 156-page 10/9/20 Report.   Guzman received this brief summary, however, in the same letter notifying him of the Mayor's decision to seek his removal from office.

Fourth, prior to the first GET Committee meeting on November 5, 2020, Guzman received no further "notice" of the reason for his potential removal. In other words, even though the Termination Letter was based upon the 10/9/20 Report, the undisputed evidence, particularly when viewed in the light most favorable to Guzman, reflects that he did not receive the 10/9/20 Report before meeting with the GET Committee.[14] Therefore, once again, he could not meaningfully prepare for the hearing that was about to occur. Fifth, Guzman was not provided with a copy of the 10/9/20 Report until some point prior to the second day of the GET Committee meetings. Defendants provide not a single case suggesting that such "notice" is sufficient.[15] Nor should they be able to, given that the hearing was at least halfway through at that point.[16]

---

[14]As noted above, when viewed in the light most favorable to Guzman, the evidence does not even conclusively show that the 10/9/20 Report was emailed to Guzman prior to the first GET Committee meeting.

[15]Defendants cite not a single supportive case in this regard in the motion or in their reply. *See generally* Dkt. No. 13-1 at 15-20; Dkt. No. 22 at 5-7. In follow-up to a question posed by the Court during the hearing on the motion, Defendants' counsel cited to *Loudermill* and *Clements v. Airport Auth. of Washoe Cty.*, 69 F.3d 321 (9th Cir. 1995). Neither case is supportive, however. In fact, both cases support the finding that Guzman was not provided with due process on the facts presented here, as both cases require "notice and an opportunity to respond[,]" *Clements*, 69 F.3d at 332 (citing *Loudermill*, 470 U.S. at 544-545), and both cases overruled the dismissal of due process claims on that ground.

[16]Not only were the meetings at least halfway through, but, at that point, both Guzman's testimony and the vast majority of the questions from councilmembers had concluded. *See* 11/5/20 Minutes at 84-85, 100-134; 11/6/20 Minutes at 61-66.

Sixth, although Guzman was provided notice that the meetings with the GET Committee would be open to the public, he was provided with no notice of who would testify or what they would testify about.   While the Court understands that the GET Committee is required by law to hold public meetings, that argument misses the point of this claim: Guzman must still be provided with due process.   To do so would have been straightforward, if, albeit, somewhat less speedy.   Notably, after the public testimony received on November 5, 2020, the GET Committee could have simply adjourned the hearing for a reasonable amount of time to allow Guzman to prepare a response to said testimony.   Instead, he was expected to respond to the wide-ranging accusations made against him in real time—essentially, the moment after the testimony had been given—even though much of the testimony had nothing to do with the 9/15/20 VIWAP Complaint or the 10/9/20 Report cited by the Mayor as the reason for Guzman's proposed termination.   Again, Defendants cite not a single case to support such meaningless notice.   Moreover, it cannot be said that affording Guzman time to respond to the public testimony would have been a waste of time, given that the GET Committee's report, approving the decision to remove Plaintiff, directly observed that the public testimony against Plaintiff was credible.[17]

---

[17]The Court disagrees, though, with many of the other apparent arguments Guzman makes with respect to the public testimony offered at the GET Committee meetings.   Specifically, Plaintiff appears to contend that the GET Committee should not have allowed *any* public testimony that

Based upon these undisputed facts, the Court does not find that Guzman was provided with procedural due process prior to his termination and, therefore, the motion is DENIED with respect to Count Two.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment, Dkt. No. 13.

IT IS SO ORDERED.

DATED: October 6, 2021 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

did not directly concern the 9/15/20 VIWAP Complaint and 10/9/20 Report. *See* Dkt. No. 21 at 13-17. Guzman, however, provides no support for that argument. There is simply no reason that this Court can discern why the GET Committee, which was charged with deciding whether to approve the removal from office of the County's Prosecuting Attorney, could not consider any information that it wished to consider in reaching that decision, *provided that Guzman was provided with procedural due process*. Assuming the latter, then there is no reason why the GET Committee could not consider public testimony both in favor of and against Guzman on any subject. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 n.12 (1972) ("The purpose of such notice and hearing is to provide the person an opportunity to clear his name. Once a person has cleared his name at a hearing, his employer, of course, may remain free to deny him future employment for other reasons."). Similarly, Guzman provides no reason why members of the public must be told that truthful and complete information is crucial, particularly when a meaningful opportunity to respond is provided and the GET Committee can assess credibility. Procedural due process does not guarantee Guzman a veto over subject matter, it simply guarantees notice and an opportunity to be heard.

20