IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| DONALD S. GUZMAN,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF MAUI, *et al.*,<br><br>Defendants. | Case No. 21-cv-00202-DKW-RT<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## INTRODUCTION

In October 2021, the Court entered an Order denying and granting in part Defendants' motion for summary judgment, finding, in pertinent respect, that, based upon the undisputed facts at that juncture, Plaintiff Donald Guzman had not been provided with procedural due process prior to his December 2020 termination as Prosecuting Attorney of the County of Maui.

Roughly eight months later, Plaintiff has now filed his own motion for summary judgment on his sole remaining procedural due process claim. Relying upon the Court's October 2021 Order, he argues that his right to procedural due process has been violated. In opposition, Defendants argue both that they were not required to provide Plaintiff with due process prior to his termination because he was an "at-will" employee and that, even if due process was required, Plaintiff

received it because he was given an opportunity to obtain an investigative report tied to the alleged misconduct that led to his termination well before his public hearing on the same.

Having reviewed the parties' original and supplemental briefs and concise statements of fact, the Court agrees with Guzman that he is entitled to summary judgment on his procedural due process claim. Notably, in light of the record before the Court, only two matters have principally changed since the October 2021 Order: (1) Defendants contend that Guzman was an "at-will" employee and thus not entitled to procedural due process; and (2) he was provided with an opportunity to receive an investigative report. Neither argument, however, changes the calculus. First, with respect to their own motion for summary judgment, Defendants *conceded* that Plaintiff had established a liberty and/or property interest in his employment. Therefore, they are estopped from reversing course and now arguing that Guzman was an "at-will" employee all along with no such property interest. Second, even if Plaintiff was provided with an opportunity to receive the investigative report, that alone does not change the fact that, at the public hearings to discuss whether Plaintiff should be terminated, he was not given the opportunity to effectively respond to allegations made against him, many of which were not mentioned in the report and could not have been anticipated.

Therefore, as more fully explained below, Guzman's motion for partial summary judgment, Dkt. No. 39, is GRANTED.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When, the moving party bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted…." *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992). This means that the movant "must establish beyond controversy every essential element" of his claim. *See S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (quotation omitted). In assessing a motion for summary judgment, all facts, including disputed facts, are construed in the light most favorable to the non-moving party. *Nelson v. City of Davis*, 571 F.3d 924, 928 (9th Cir. 2009); *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005).

## FACTUAL BACKGROUND

The facts in the light most favorable to Defendants, as the non-movants, reflect the following. On September 15, 2020, a complaint under the Violence in the Workplace Action Plan (VIWAP) was filed against Guzman (9/15/20 VIWAP

Complaint). Plaintiff's Concise Statement of Facts (PCSF) at ¶ 1 (citing Dkt. No. 14 at ¶ 1), Dkt. No. 40; Defendants' Concise Statement of Fact (DCSF) at ¶ 1, Dkt. No. 46. On September 24, 2020, in connection with the 9/15/20 VIWAP Complaint, the County of Maui (County) hired an outside law firm to investigate an incident that occurred between Guzman and another attorney, Leslee Matthews (Matthews), working under his supervision. 10/9/20 Confidential Report (10/9/20 Report) at 1, Dkt. No. 14-8. On October 9, 2020, the outside investigator issued a 156-page (including exhibits) Confidential Report to the County regarding the 9/15/20 VIWAP Complaint (10/9/20 Report). *See generally* 10/9/20 Report, Dkt. No. 14-8.

Among other findings in the 10/9/20 Report, the outside investigator determined that Guzman had threatened Matthews about how she was to respond to him via email, threatened Matthews' job security, "aggressively" grabbed an email out of Matthews' hand, prevented Matthews from speaking during a meeting by continuously interrupting her, and slammed his hand on a table and raised his voice during the same meeting. 10/9/20 Report at 21-22. The outside investigator concluded that these actions were "threats" in violation of the County's Workplace Violence Policy (VIW Policy). *Id*. at 22. The outside investigator also stated that certain other matters had arisen during the

investigation, but were beyond the scope of the same, including whether Guzman had violated the VIW Policy with respect to other employees. *Id*.

After issuance of the 10/9/20 Report, Guzman met with Mayor Michael Victorino (Mayor) on October 16 and 19, 2020. PCSF at ¶ 6; DCSF at ¶ 6. During the October 16, 2020 meeting, Guzman was offered and refused a copy of the 10/9/20 Report with the names of witnesses, other than Matthews, redacted. Defendants' Concise Statement of Facts in Opposition (DCSFO) at ¶ 22, Dkt. No. 46.[1] Guzman was also advised to contact Sananda Baz for a redacted copy of the 10/9/20 Report, something which he did not do. *Id*. at ¶¶ 23-24. Over the course of the two meetings, the Mayor gave Guzman the option of resigning, removal from office, or demotion. Decl. of Michael P. Victorino at ¶¶ 9, 12, Dkt. No. 14-2. Guzman chose removal from office, *id*. at ¶ 13, and, on October 19, 2020, Guzman received a two-page letter from the Mayor regarding his "Termination of Employment[,]" 10/19/20 Letter from Mayor to Guzman (Termination Letter),

---

[1]Although permitted by Local Rule, Plaintiff did not file, with his reply, a statement responding to the additional facts set forth in Defendants' concise statement of facts in opposition to the motion for summary judgment. *See* Local Rule 56.1(e). In light of Plaintiff's own concise statement of facts, though, it appears that he disputes the contention that he was offered a copy of the 10/9/20 Report prior to or during his meetings with the Mayor in October 2020. *See* Dkt. No. 40 at ¶¶ 7, 10, 12, 19. Because the facts are construed in the light most favorable to Defendants, as the non-movants here, the assertion that Plaintiff was offered a redacted copy of the 10/9/20 Report prior to or during the October 2020 meetings is accepted.

Dkt. No. 14-23 at 3-4.[2] Therein, the letter stated Guzman had violated the VIW Policy and, therefore, he would be placed on leave without pay while a resolution was sent to the Maui County Council (Council) requesting concurrence on his removal. Termination Letter at 3-4. In addition, included in the Termination Letter was a brief summary of the 10/9/20 Report. *Id*.

On October 21, 2020, the Mayor sent a letter to the Council that attached a resolution requesting its concurrence on Guzman's removal as Prosecuting Attorney for the County. 10/21/20 Letter from the Mayor to the Council, Dkt. No. 14-10.

On November 3, 2020, Guzman sent a letter to the Director of Council Legal Services regarding his "objections" to the 10/9/20 Report. 11/3/20 Letter from Guzman to David M. Raatz (11/3/20 Letter), Dkt. No. 20-4. Therein, Guzman asserted that, prior to the Mayor taking action with respect to his removal from office, he was denied due process and denied the opportunity to read the 10/9/20 Report. *Id*. at 1. Guzman also objected to the Mayor disclosing any incidents unrelated to the 9/15/20 VIWAP Complaint and "request[ed]" that, before the

[2]In citing to the Termination Letter, the Court cites the page numbers assigned by CM/ECF in the top-right corner of each page, *i.e*., "Page 3 of 4."

Council, the scope of discussion be limited to Matthews and the 9/15/20 VIWAP Complaint. *Id*. at 2.

The Council's Governance, Ethics, and Transparency (GET) Committee met on November 5 and 6, 2020 to discuss Guzman's removal as Prosecuting Attorney. PCSF at ¶ 11; DCSF at ¶ 11. By November 5, 2020, Plaintiff had not received a copy of the 10/9/20 Report. 3/7/22 Decl. of Donald S. Guzman (Guzman Decl.) at ¶ 9, Dkt. No. 40-1.[3] Guzman was unable to confirm receipt of the 10/9/20 Report until the morning of November 6, 2020, after the GET Committee hearings were already underway. *Id*. at ¶ 10.

At the November 5, 2020 meeting, 45 people signed up to testify regarding the proposed resolution to remove Guzman. Minutes of 11/5/20 GET Committee Meeting at 16 (11/5/20 Minutes), Dkt. No. 14-12. The testifiers included friends and family of Guzman, his work colleagues, and members of the community. *See generally id*. at 16-83, 87-88. Guzman was not provided notice of who would testify before the GET Committee or what they would testify about. Guzman

[3]In their concise statement of facts, Defendants dispute this assertion. DCSF at ¶ 12. They do so, citing evidence, which they cited in support of their own motion for summary judgment, for the proposition that Plaintiff received the 10/9/20 Report on or around November 4, 2020. *See id*.; Dkt. No. 13-1 at 5. As the Court explained then, however, the evidence Defendants cite continues to suffer from the fact that the email in question is not dated or timed and does not contain the email address to which it was sent. Dkt. No. 26 at 7 n.4. Therefore, even construing the facts in Defendants' light, the Court cannot say that Defendants have presented evidence disputing Plaintiff's declaration.

Decl. at ¶ 10.[4] Each testifier was given three minutes of time to testify, followed by questions from councilmembers. *Id*. at 7. Generally, individuals testified both against and in favor of Guzman keeping his position, with certain of both sets of testifiers relying upon or referring to Guzman's workplace and non-workplace conduct prior to the incident with Matthews as support for their stance. *See generally id*. at 16-83, 87-88.

After this public testimony, Guzman himself testified for three minutes, followed by an additional five minutes later in the day. *Id*. at 84-85, 100-103. Guzman was also questioned at length by members of the GET Committee about, generally, matters in the 10/9/20 Report, as well as matters not part of the 9/15/20 VIWAP Complaint. *Id*. at 104-134; Minutes of 11/6/20 GET Committee Meeting (11/6/20 Minutes) at 61-66, Dkt. No. 14-17. When asked, Guzman did not deny that he had violated the VIW Policy, as determined in the 10/9/20 Report. 11/5/20 Minutes at 125.

Near the conclusion of the November 6, 2020 meeting, the Chair of the GET Committee recommended adopting the Mayor's proposed resolution to remove

[4]Although Defendants deny this assertion, Dkt. No. 46 at ¶ 14, their position fails to actually dispute the notion that Guzman was not provided with such notice. Instead, the contention that no one knew who would testify largely proves the point that Guzman did not know.

Guzman as Prosecuting Attorney. 11/6/20 Minutes at 66.[5] All of the other councilmembers also voted to remove Guzman. *Id*. at 72-73.

On December 4, 2020, the Council unanimously approved the resolution removing Guzman as Prosecuting Attorney, resulting in his termination. PCSF at ¶ 16; DCSF at ¶ 16. In doing so, among other things, the GET Committee observed that it had received testimony in support of removing Guzman, including from employees of the County, with respect to workplace incidents that had "happened recently within the Department of the Prosecuting Attorney, but one occurred about five years ago in a previous workplace." GET Committee Report No. 20-153 at 2, Dkt. No. 14-19. The GET Committee found this testimony to be "credible." *Id*.

**<u>RELEVANT PROCEDURAL BACKGROUND</u>**

On July 26, 2021, Defendants filed a motion for summary judgment. Dkt. No. 13. After briefing and a hearing, on October 6, 2021, this Court granted in part and denied in part Defendants' motion for summary judgment. Dkt. No. 26. As it pertains to the instant analysis, the Court denied Defendants' motion for

[5]Although Defendants appear to deny that the Chair of the GET Committee recommended adopting the Mayor's proposed resolution, Dkt. No. 46 at ¶ 15, the 11/6/20 Minutes clearly show that the Chair made this recommendation prior to the full GET Committee voting. 11/6/20 Minutes at 66-67.

summary judgment with respect to Plaintiff's procedural due process claim.[6] Among other things, based upon the facts presented, the Court found that Plaintiff was denied procedural due process prior to his termination as Prosecuting Attorney. *Id*. at 16-19. Specifically, the Court observed that three elements were required to establish a procedural due process claim, and Defendants had conceded the first two of those elements. *Id*. at 15-16. As for the final element, whether Plaintiff received adequate process, the Court found that Plaintiff had been denied *due* process on numerous grounds, including Plaintiff not being provided with (1) a copy of the 10/9/20 Report before his meetings with the Mayor or the GET Committee or (2) notice of who would testify at the hearings before the GET Committee or a reasonable chance to respond to said testimony. *Id*. at 16-19.

After entry of the Court's October 6, 2021 Order, Defendants filed an Answer to the Complaint. Dkt. No. 28. On March 24, 2022, Plaintiff filed the instant motion for partial summary judgment ("motion") with respect to his procedural due process claim, along with a concise statement of facts in support of the same. Dkt. Nos. 39-40. After scheduling a hearing on the motion, Dkt. No. 42, Defendants filed an opposition to the motion and a concise statement of facts,

[6]Defendants' motion for summary judgment was granted, however, with respect to Plaintiff's two other claims. Dkt. No. 26 at 10-15.

Dkt. Nos. 45-46. Plaintiff then filed a reply in support of the motion. Dkt. No. 47.

After reviewing the parties' briefing on the motion, on May 18, 2022, the Court vacated the hearing on the same and ordered the parties to supplement their briefing and schedule a settlement conference before the assigned Magistrate Judge. Dkt. No. 49. With respect to supplemental briefing, the parties were instructed to explain (1) whether Defendants waived any argument that Plaintiff did not have a property or liberty interest in his former position as the County's Prosecuting Attorney, (2) whether such position was an "at-will" position, and (3) whether Plaintiff had a liberty interest in his former position. *Id.* Thereafter, the parties filed supplemental briefing in response to the May 18, 2022 Order. Dkt. Nos. 52, 54-55. The parties also held a settlement conference with the assigned Magistrate Judge, which was unsuccessful. Dkt. No. 53.

This Order now follows.

**DISCUSSION**

As mentioned, Plaintiff moves for summary judgment on his sole remaining claim of procedural due process. He does so, relying in large part on the factual record and findings made in the October 6, 2021 Order. Dkt. No. 39 at 8-10. In opposition, Defendants contend two principal matters differentiate the instant

motion from the one at issue in the October 6, 2021 Order. First, Defendants assert that they provided Plaintiff with an opportunity to review a redacted version of the 10/9/20 Report during the meeting with the Mayor on October 16, 2020, but Plaintiff refused. Dkt. No. 45 at 7-9. Second, Defendants contend that Plaintiff was not entitled to due process prior to his termination because he was an "at-will" employee and, thus, had no property interest in his former position. *Id*. at 9-10.

As more fully discussed below, the Court disagrees that either of these arguments alter the result here that, prior to being terminated as the County's Prosecuting Attorney, Plaintiff was denied procedural due process. The Court begins with the latter of Defendants' arguments.

Defendants argue, unlike in their own motion for summary judgment, that Plaintiff was not entitled to procedural due process prior to being terminated because he was an "at-will" employee and, thus, did not have a property interest in his employment. As mentioned in the October 2021 Order, in order for procedural due process protections to be implicated, an individual must have a liberty or property interest protected by the U.S. Constitution. Dkt. No. 26 at 15 (citing *Guatay Christian Fellowship v. Cty. of San Diego*, 670 F.3d 957, 983 (9th Cir. 2011)). Little more needed to be said about this matter in that Order because, in their motion for summary judgment, Defendants unequivocally stated that "[t]he

first two elements [of the procedural due process test] have been satisfied." Dkt. No. 13 at 15.[7] Defendants went on to state that the first two elements had been satisfied, in part, because Plaintiff was employed by the County as Prosecuting Attorney. *Id*. For whatever reason, in opposing the instant motion, Defendants have performed an about-face, at least with respect to whether Plaintiff had a property interest in his former position. The question, therefore, is whether Defendants may change direction in the described manner two motions for summary judgment deep into this proceeding. This Court does not believe they may.

To begin with, the Court disagrees with Defendants' assertion, in their supplemental briefing, that they have "consistently argued that Plaintiff was an at-will employee." Dkt. No. 54 at 7. Until the opposition to the instant motion, no such argument had been made, and Defendants' citations to the record do not suggest otherwise. Notably, Defendants cite two paragraphs of the Complaint, neither of which concern at-will employment. They also cite, without specific citation, the memorandum in support of their July 2021 motion for summary judgment, which, as just explained, reflects only that Defendants *conceded*

[7]It is the first element of said test that encompasses the need for a liberty or property interest protected by the U.S. Constitution. *See* Dkt. No. 26 at 15.

Plaintiff had either a liberty or property interest in his position.[8] Put simply, contrary to Defendants' contention, until their opposition to the motion, they had never even broached the subject of at-will employment in filings before the Court, let alone argued that Plaintiff was an at-will employee.

Defendants next contend that, in their motion for summary judgment, they "nullif[ied]" the issue of liberty or property interests by arguing that Plaintiff was afforded due process. Dkt. No. 54 at 7. That is a mischaracterization of their motion, however, given that the latter did not "nullify" the former. Instead, the former was "nullif[ied]" by Defendants asserting, without condition, that the liberty/property interest element had been satisfied. *See* Dkt. No. 13-1 at 15.

Defendants next argue that they could not have conceded this issue for the whole of this litigation because their earlier concession was not an "admitted fact", but "a legal position that does not bind the County[,]" citing *Lee v. Puamana Cmty. Ass'n*, 128 P.3d 874 (Haw. 2006). Dkt. No. 54 at 7-8. Defendants ignore, however, the very case they cite. Notably, a party can be estopped from taking inconsistent legal positions. *Lee*, 128 P.3d at 888-889. In that regard, Defendants, in conclusory fashion, mention only one part of the analysis to be

---

[8]Defendants also cite a non-existent paragraph of their Answer. *See* Dkt. No. 54 at 7 (citing Dkt. No. 28 at ¶ 513-1). In any event, having reviewed the Answer, the Court can find not even a mention of at-will employment therein.

undertaken with respect to judicial estoppel. *See* Dkt. No. 54 at 8.[9] Based upon the Court's independent review, the doctrine should be applied here to prevent Defendants from shifting positions like the wind in the face of adverse decisions during this case.

First, Defendants' position now is "clearly inconsistent" with the position they took in their own motion for summary judgment. *See Lee*, 128 P.3d at 889. Second, although the second factor does not appear pertinent here, given that Defendants have not asserted their inconsistent position in a "later proceeding", but, instead, *in the same case*, to the extent this factor does apply, Defendants certainly "persuad[ed]" the Court (and Plaintiff) to accept their original position that Plaintiff had established a liberty or property interest in his employment. *See id*. Finally, at this stage in the proceedings, when, as discussed, the issue had never even been mentioned before, Defendants would receive an "unfair advantage" in being able to switch the focus of this claim from the process Plaintiff received to whether Plaintiff was ever actually entitled to such process in the first place. Moreover, as *Lee* explained, judicial estoppel is designed to stop parties from "playing fast and loose

---

[9]As explained by the Supreme Court of Hawai'i, courts should consider (1) whether a party's later position is "clearly inconsistent" with its earlier position, (2) "whether the party has succeeded in persuading a court to accept that party's earlier position," and (3) whether the party would derive an "unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Lee*, 128 P.3d at 889.

with the court or blowing hot and cold during the course of litigation." *Id.* (quotations and internal quotations omitted). Here, given the procedural posture of this case, where Defendants have received an adverse determination on whether adequate process was provided to Plaintiff, it would be nothing but blowing hot and cold for them to now abandon a position they had previously taken in an attempt to avoid another adverse determination. Therefore, the Court finds that Defendants are judicially estopped from arguing that Plaintiff did not have a liberty or property interest in his former position.[10]

Defendants also argue that Plaintiff was provided an opportunity to receive a redacted copy of the 10/9/20 Report during the October 16, 2020 meeting with the Mayor, and he refused. Defendants appear to argue, therefore, that Plaintiff received adequate due process. Dkt. No. 45 at 7-9. The Court does not agree.

As discussed, in the October 2021 Order, the Court found that Plaintiff was denied procedural due process because he was both (1) not provided with a copy of the 10/9/20 Report prior to his meetings with the Mayor or the GET Committee *and*

---

[10]This is especially so with respect to whether Plaintiff had a *liberty* interest in his former position because Defendants did not even make the argument in their opposition to the motion that Plaintiff lacks a liberty interest. Instead, they simply mention that Plaintiff did not have a *property* interest. *See* Dkt. No. 45 at 9-10. Moreover, even after being prompted by the Court to address this issue, in their supplemental brief, none of Defendants' arguments in this regard address whether they waived any argument that Plaintiff lacked a liberty interest in his former position. *See* Dkt. No. 54 at 7-9.

(2) not provided with notice of who would testify at the hearings before the GET Committee or a reasonable chance to respond to said testimony. Here, now viewing the evidence in Defendants' favor, if Plaintiff was given the opportunity to receive a copy of the 10/9/20 Report and refused it, then it cannot be said that he was not provided with a copy of said report. That much seems axiomatic. For purposes of the instant summary judgment, this fact would cure *part* of the procedural deficiencies identified in the October 2021 Order. It would not, however, cure them all.

This is because, even if Plaintiff had an opportunity to review the 10/9/20 Report, he was still not provided with *either* notice of who would testify at the hearings before the GET Committee or what they would testify about *or* a reasonable opportunity to respond to those who testified against him at the hearings. Nor did the GET Committee agree to Guzman's request to limit the scope of its hearing and review to Matthews and the 10/9/20 Report. Defendants contend otherwise, arguing principally that the 10/9/20 Report would have given Plaintiff sufficient notice. Defendants' own arguments, however, show the fallacy of any such contention. As an initial matter, Defendants concede that the names of witnesses in the 10/9/20 Report offered to Plaintiff (other than Matthews) would have been redacted. Dkt. No. 45 at 2. Therefore, even if Plaintiff had the 10/9/20 Report and

everyone mentioned in the report testified, he would still not have known who they were beforehand. Rather, at best, as Defendants appear to acknowledge, Plaintiff would have needed to rely on the identity of specific witnesses becoming "immediately apparent" during their testimony. *See* Dkt. No. 45 at 8. As explained in the October 2021 Order, the Court disagrees that this sort of "real-time notice" is notice sufficient to provide adequate due process. *See* Dkt. No. 26 at 19.

The Court also disagrees with Defendants' contention that "[m]uch" of the problematic testimony would have been remedied by accepting a copy of the 10/9/20 Report. At most, Defendants identify four individuals mentioned in the 10/9/20 Report who also testified at the hearings before the GET Committee. *See* Dkt. No. 45 at 7-8. Defendants ignore, however, that 45 people signed up to testify at those hearings. And, while not all of the same testified against Plaintiff, certainly more than four did. Defendants provide no explanation for how Plaintiff was provided adequate due process with respect to those witnesses. Defendants also provide no explanation of how the matters disclosed in the 10/9/20 Report, some of which were merely brief anecdotes of information, could provide Plaintiff with notice of the specific matters discussed at the GET Committee hearings by the witnesses they

identify.[11]

Ultimately, with respect to the process afforded Plaintiff at the GET Committee hearings on November 5 and 6, 2020, little to nothing has changed in the lack of *due* process Plaintiff received. While the Court acknowledges (again) that the hearings were open to the public and no one knew who would appear to testify or what about, Defendants yet again miss the point: if no one (including Plaintiff) had notice of the testimony that would be received, after hearing the same, Plaintiff needed a reasonable opportunity to prepare a response, given that he could not prepare in advance. He was denied that opportunity. The "real time" notice Plaintiff actually received was simply no notice at all. *See* Dkt. No. 26 at 16-17 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)).

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Partial Summary Judgment, Dkt. No. 39.

//

//

[11]For example, Defendants assert that a witness, Andrew Martin, testified about "an incident involving the cost of office shirts" that was mentioned in the 10/9/20 Report. Dkt. No. 45 at 8. At the GET Committee hearings, though, Mr. Martin testified about "half a dozen" instances of improper conduct, not just one. *See* Dkt. No. 14-12 at 45.

IT IS SO ORDERED.

DATED: June 24, 2022 at Honolulu, Hawai‘i.




Derrick K. Watson
United States District Judge